IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-473-FL

| | | |
|---|---|---|
| JACQUELINE REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| HOSPIRA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

In this matter plaintiff, a former employee of defendant, alleges in complaint filed October 28, 2009, violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*. The case comes now before the court on defendant's motion for summary judgment (DE # 17), supported by a variety of materials.[1] Plaintiff has responded in opposition, relying upon her own deposition testimony, and several of the same exhibits on which defendant relies. Having considered the arguments of the parties, and carefully reviewed all of the materials tendered in the case, the court grants defendant's motion for summary judgment for reasons that follow.

---

[1] In support of its motion, defendant relies upon the following declarations, depositions, and exhibits: (1) the declaration of Michael Pope, production section manager for defendant at the Clayton facility where plaintiff worked; (2) the declaration of Carolyn Davis, who, at the time of the events in question was defendant's senior human resources representative; (3) the declaration of Paula Whitaker, a supervisor at defendant's Clayton facility; (4) medical records of plaintiff's visit to Wayne County Memorial Hospital on November 14, 2007; (5) plaintiff's deposition, attached to which is defendant's human resources policy and the November 16, 2007, letter from Carolyn Davis informing plaintiff of her impending termination if she failed to return to work; (6) the deposition of Jason Coggins, a physician's assistant at Raleigh Orthopaedics who examined plaintiff on one occasion; (7) the deposition of Deborah Roberson, a nurse practitioner at Clayton Medical, who examined plaintiff twice; and (8) the rule 30(b)(6) deposition of Lisa Boykin, who was deposed on behalf of defendant.

## STATEMENT OF THE CASE

Plaintiff alleges she was terminated November 21, 2007 in violation of the FMLA, because the days she was absent, used as the basis for her termination, were protected days under the FMLA due to her own serious health condition. She complains of the failure of defendant to provide her required notices. She also complains about the unlawful actions of defendant under that provision of the FMLA which prohibits various activities such as employer interference with an employee's use of leave under the FMLA or employer retaliation against an employee who asserts rights under the FMLA.

Plaintiff seeks lost wages, benefits, and other compensation, liquidated damages, and certain equitable relief, as well as her attorneys fees. In answer filed January 4, 2010, defendant asserts, among other things, that plaintiff's claim under the FMLA is barred because plaintiff was not qualified for FMLA leave during the relevant time period and failed to provide proper medical certification pursuant to the requirements of the FMLA. After a period of discovery guided by the court's case management order, upon the parties' request, the court lengthened the period within which dispositive motions could be filed up to and including August 10, 2010. On that date, the instant motion was filed.[2]

## STATEMENT OF THE UNDISPUTED FACTS

Defendant is a global pharmaceutical and medication delivery company. Defendant has a manufacturing facility in Clayton, North Carolina. From approximately July of 2006 until

---

[2] Recently, the parties requested and were allowed a continuance of the trial date, pending the court's decision on defendant's motion for summary judgment.

2

November of 2007, plaintiff was employed as a production operator at defendant's Clayton facility in the finishing department. (Reid Dep. 16:25, 17:10; Pope Decl. ¶ 3.)

Plaintiff's job consisted of working on the packaging line, inspecting bottles and packing them in boxes for shipping. (Reid Dep. 17:18-20.) There are six work stations in the finishing department. (Reid Dep. 18-24; Pope Decl. ¶ 3.) At the bottle loading station, bottles are stacked on carts. The task requires lifting of approximately twenty-five to forty pounds. At the basket unloading station, the production operator uses a hydraulic lift to unload stacked bottles. The hydraulic lift does the lifting at this station. (Pope Decl. ¶ 5.) In the inspection area, bottles that weigh less than two pounds are inspected, which requires minimal lifting. There is also minimal lifting involved at the bottle packing station. At the skid stacking station, the operator loads boxes that weigh less than five pounds to approximately twenty-five pounds. At the box-making station, only light-weight cardboard inserts are handled. (Pope Decl. ¶ 5.)

Defendant's human resources policy, on which both parties rely, states its compliance with the FMLA. Defendant's policy incorporates the language of the FMLA, and requires any employee seeking leave due to a serious health condition to submit medical certification acceptable to the "Employee Health Department" within fifteen (15) calendar days of a written request to do so. (Reid Dep. Def.'s Ex. 2, at 2.) In addition to the language of its human resources policy, defendant provides posters for employees at the work site describing the FMLA as well as a company intranet site that includes the language of the policy and applicability of the FMLA. Plaintiff received a copy of the human resources policy in the employee handbook when she began work with defendant, and was aware of the FMLA posters at the work site (Reid Dep. 28:8-16; 29:22-24.)

3

On October 8, 2007, plaintiff was injured while working at the bottle loading station. (Pope Decl. ¶ 6; Reid Dep. 32:16.) While loading bottles, plaintiff lifted a basket and felt a pop in her right shoulder. Plaintiff reported the pain to her supervisor, Mike Pope, on October 10, 2007, two days later. (Reid Dep. 33:4.) On October 12, 2007, plaintiff went to an appointment, set up by defendant, at Clayton Medical. Deborah Roberson, a nurse practitioner, examined plaintiff. Roberson prescribed a six-day supply of oral steroids for plaintiff, and advised work-related restrictions for one week of no lifting over five pounds and no repetitive work with her right hand. Roberson did not take plaintiff out of work. (Roberson Dep. 12:8-10.) Plaintiff communicated Nurse Roberson's instructions to Davis when plaintiff returned to work. (Reid Dep. 35:6-7.) Plaintiff returned to work for three or four days. (Id. at 35:15-16.) Instead of lifting bottles, plaintiff watched bottles and operated the box maker. (Id. at 36:1.)

Plaintiff called in sick on October 18, 2007. (Pope Decl. ¶ 7.) On October 19, 2007, plaintiff returned to Clayton Medical. Roberson noted that plaintiff felt pain in her right arm, had trouble lifting things at home, and that the pain was worse when plaintiff slept. Roberson's notes mention a concern for a possible rotator cuff injury, and advise that plaintiff be evaluated by orthopedics. (Roberson Dep. 12:8-10; 16:21-23.) Roberson again advised work restrictions but did not recommend taking plaintiff out of work. (Id. 14:20-23.)

Plaintiff called in sick again on October 22, 2007, but worked on October 23, 24, and 25, 2007. (Pope Decl. ¶ 7.) On October 26, 2007, plaintiff went to Raleigh Orthopaedics, where she was examined by physician's assistant, Jason Coggins. Coggins prescribed physical therapy, continued work restrictions, and the continued use of the steroid plaintiff was prescribed by the representative of Clayton Medical. (Id.; Reid Dep. 37:1-4.) Coggins did not prescribe plaintiff any

4

separate medication, and stated that plaintiff could return to work on October 29, 2007. (Reid Dep. Def.'s Ex. 5.) Plaintiff was not scheduled to work October 29, 2007, and never returned to work after that date. (Pope Decl. ¶ 8.)

While much is undisputed, there appears a disputed fact of or relating to plaintiff's interaction with Davis and whether she provided certain documentation issued by Coggins. Whether Davis saw Coggins' documentation, as plaintiff claims, or did not, as Davis contends, does not matter, for reasons discussed more particularly below. Pursuant to her deposition testimony, (Reid Dep. 42:14-18), plaintiff states that on November 2, 2007, she talked with Davis and provided Davis a copy of Coggins' documentation to which reference has been made, recommending physical therapy for plaintiff and advising a work restriction prohibiting lifting objects greater than five pounds. (Reid Dep. Def.'s Ex. 4, 5.) However, in her declaration, Davis states that after October 29, 2007, she called plaintiff on multiple occasions to get medical documentation from health care providers justifying plaintiff's absence from work, and plaintiff did not provide the documentation. (Davis Decl. ¶ 3.) Nowhere does the disputed documentation recite that plaintiff was taken out of work after October 29, 2007. (See Pl.'s Mem. Opp'n Summ. J. 5; Def.'s Mot. Summ. J. 8, 13.)

On November 14, 2007, plaintiff was admitted to Wayne County Memorial Hospital for pain in her shoulder. (Reid Dep. 43:1-2.) The supervising physician noted that plaintiff appeared to have tendinitis or a shoulder sprain. (Wayne County Memorial Hospital Decl. p. 4.) Plaintiff was instructed to wear her arm in a sling, and was prescribed medication called Lortab for her pain. (Id.) Plaintiff told Davis about the hospital visit, but did not provide documentation for it. (Reid Dep. ¶¶ 43:18; 45:12-13.)

5

On November 16, 2007, Davis sent plaintiff a letter stating that if plaintiff did not provide medical documentation justifying absences from work after October 29, 2007, defendant would deem plaintiff to have abandoned her job. (Davis Decl. ¶ 4.) As of November 21, 2007, Davis had not received the requested medical documentation, and interpreted plaintiff's absence as job abandonment. (<u>Id.</u>).

On December 4, 2007, plaintiff visited Goldsboro Orthopaedics, where a physician, Dr. Rockwell, treated plaintiff and took her out of work. (Pl.'s Ex. 16, at 1.) Plaintiff returned to Dr. Rockwell for a follow-up visit on December 13, 2007, and he continued her no work status pending an MRI. (<u>Id.</u> at 2.) On January 7, 2008, plaintiff had an MRI at Goldsboro Orthopaedics that revealed a tear. (<u>Id.</u> at 5.) Plaintiff received further treatment from Goldsboro Orthopaedics, and the following December, plaintiff underwent surgery for a rotator cuff tear. (<u>Id.</u> at 7.)

**ANALYSIS**

A. Standard Of Review

A court should grant a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleadings, <u>Anderson</u>, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

B. Application Of The FMLA

As already noted, plaintiff's claims against defendant arise under the FMLA. Congress enacted the FMLA to support working parents and employees with serious health conditions. See generally 29 U.S.C. §§ 2601(a). One of the purposes of the FMLA is to entitle employees to take reasonable leave for medical reasons. § 2601(b)(2). The FMLA grants the Secretary of Labor authority to promulgate regulations implementing the Act. See 29 U.S.C. § 2654. The regulations in effect at the time of the relevant conduct were the 1995 regulations.[3]

For the FMLA to apply to an employer, the employer must be engaged in commerce or an industry or activity affecting commerce, and must employ fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611. To be an eligible employee under the FMLA, the employee must have been employed for at least twelve (12) months by the employer with respect to whom leave is

---

[3]This court must apply the regulations then in effect. Since the conduct occurred in 2007, the applicable regulations are the 1995 regulations. Cf. Robinson v. Overnite Transp. Co., 110 F.3d 60, *7 (4th Cir. 1997) (applying the regulations "in effect at the time" of plaintiff's injury and termination).

7

requested, and for at least 1,250 hours of service with such employer during the previous twelve-month period. Id. The parties do not dispute that defendant is an employer and plaintiff is an employee under these definitions. (See Compl. ¶ 7; Answer ¶ 6.)

When need for leave under the FMLA is not foreseeable, as it might be with pregnancy or adoption, the employee must provide his/her employer with notice of a need for leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The regulations anticipate that notice should be given within one or two working days of learning of the need for leave. Id. When the need is unforeseeable, notice by telephone is acceptable. Id.

Before an employer's duty to provide leave is triggered, an employee must provide "adequate" and "timely" notice of the need for covered leave. Peeples v. Coastal Office Products, Inc., 64 Fed.Appx. 860, 863 (4th Cir. 2003) (citing Carter v. Ford Motor Co., 121 F.3d 1146, 1148 (8th Cir. 1997)). If an employee fails to give notice, or fails to request leave at all, the employer does not violate the FMLA. See, e.g., Peeples, 64 Fed.Appx. 860, 863; McGraw v. Sears, Roebuck & Co., 21 F.Supp.2d 1017, 1021 (D. Minn. Sept. 18, 1998).

"The employee has the initial burden of triggering the FMLA by providing notice to her employer." Krenzke v. Alexandria Motor Cars, Inc., 298 Fed.Appx. 629, 632-33 (4th Cir. 2008). Whether notice is sufficient is a question of fact. See e.g., Pellegrino v. United Parcel Serv., Inc., 2010 WL 1346415 *3 (D.S.C. Mar. 30, 2010) (citing Hopson v. Quitman County Hosp. and Nursing Home, Inc., 126 F.3d 635, 640 (5th Cir. 2997)). The Fourth Circuit has held that to satisfy the employee notice requirement under the FMLA, the employee need only inform her employer that she needs leave from work for a medical reason. Krenzke, 289 Fed. Appx. at 632. The employee must provide "verbal notice sufficient to make the employer aware that the employee needs FMLA-

8

qualifying leave." Id.; 29 C.F.R. § 825.302. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." Id.; 29 C.F.R. § 825.303(b). If the employee provides sufficient notice, the burden shifts to the employer to gather information and determine if the FMLA is implicated.

While the inquiry of whether employee notice is sufficient is a factual inquiry, Fourth Circuit case law reveals certain baseline standards of what the Krenzke court described as a need to only "inform [plaintiff's] employer that [plaintiff] needs leave from work for a medical reason." Krenzke, 298 Fed.Appx. at 632. In Peeples, the Fourth Circuit found employee notice insufficient where an employee provided a discharge note from an emergency room physician that instructed the employee not to return to work for a week, but the employee only provided vague statements of his diagnosis and possible return date when his employer repeatedly requested more information as to his medical status and needs. Peeples, 64 Fed.Appx. at 863-64. Additionally, in cases where the Fourth Circuit found employee notice to be sufficient, the employees gave notice of a *need for leave*. See, e.g., Dotson v. Pfizer, Inc., 558 F.3d 284, 295-296 (4th Cir. 2009) ("There is no question that Dotson gave Pfizer adequate notice of his need for leave during the adoption process"); Krenzke, 289 Fed.Appx. at 632-33 ("The facts . . . show [plaintiff] satisfied her initial burden under the FMLA by notifying [her employer] that she had a medical illness and needed medical leave because of the illness."). Thus, while an employee need not mention the FMLA, Fourth Circuit case law suggests that some notice of need for leave is required.

In light of these requirements, the court concludes for reasons that follow there is no genuine issue concerning the fact that plaintiff in this case did not provide sufficient notice to defendant under the FMLA. While the manner of employee notice of FMLA leave is a question of fact, here,

9

the undisputed facts relating to plaintiff's communication with defendant from the time she was injured, during the beginning of her medical treatment, and after October 29, 2007, do not show that plaintiff actually requested leave for a medical reason.

Plaintiff testified at her deposition that she alerted Davis as early as October 19, 2007, as to the status of her then ongoing treatment at Clayton Medical, and later informed Davis of her problems regarding workers compensation with Raleigh Orthopaedics and her November 14, 2007, emergency room visit. These communications do not constitute request for medical leave under the FMLA. See, e.g., Dotson, 558 F.3d at 295-296; Krenzke, 289 Fed.Appx. at 632-33.

Because plaintiff failed to request medical leave, defendant had no notice that the FMLA was implicated. In her declaration, Davis states that after October 29, 2007, "[plaintiff] simply told me that she did not feel well enough to work but did not provide any medical documentation." (Davis Decl. ¶ 3.) Davis also states, "I called plaintiff on multiple occasions to attempt to get her to send us medical documentation demonstrating that health care providers had taken her out of work." (Id.)

In that portion of her deposition that plaintiff expressly relies on to support her opposition to summary judgment in favor of defendant, plaintiff states that on November 2, 2007, she told Davis "[plaintiff] was in a lot of pain and that they was placing on – against my restriction, that they kept putting me on the inspection line." (Reid Dep. 53:7-13.) In response to the question whether Reid told Davis anything else in this conversation, such as a need for medical leave, plaintiff responded, "No." (Id. 53:16.) While plaintiff's statement reflects that she experienced pain, it does not provide notice that she needed medical leave, and there is nothing else in the record which would show this.

The medical documentation provided to defendant did not state plaintiff needed to be out of

10

work, and thus was not an alternate source from which defendant might have been put on notice that plaintiff needed FMLA leave.[4] See Krenzke, 289 Fed.Appx. at 632-33 (noting that regardless of conversations between employee and employer, the employer received sufficient notice of employee's need for FMLA leave from a doctor's note stating that extended leave was necessary for medical reasons). As of October 29, 2007, no medical personnel advised that plaintiff could not work. Thus, defendant had no statement from a nurse, physician's assistant, or doctor that plaintiff needed leave.

In her deposition, plaintiff states that Coggins and the physician at Wayne County Memorial Hospital "took [her] out of work." (Reid Dep. 42:16-17; 43:1.) However, the medical reports of Coggins and the emergency room physician do not reflect that plaintiff was taken out of work at all by the physician at Wayne County Memorial Hospital, and not after October 29, 2007, by Coggins. In viewing the record in the light most favorable to plaintiff, the court assumes the credibility of the plaintiff's evidence unless it is "facially incredible." Willis v. Town of Marshall, North Carolina, 275 Fed. Appx. 227, 235 (4th Cir. 2008) (citing Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). A "self-serving opinion that cannot, absent objective corroboration," create a genuine issue of fact, does not survive summary judgment. Id. (citing Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004)); see also Victors v. Kronmiller, 2009 WL 971448 at *7 (D.Md. Apr. 8, 2009) (granting summary judgment when plaintiffs cited to exhibits that contradicted their allegations).

---

[4]While there is some dispute as to whether plaintiff showed Davis Coggins' report from Raleigh Orthopaedics, whether or not she did does not change the outcome. Had Davis seen the medical report, she would have noted that Coggins stated plaintiff could return to work on October 29, 2007. (Reid Dep. Def.'s Ex. 4, 5.) Plaintiff herself admitted this in her deposition. (Reid Dep. 42:19-20.)

11

Plaintiff's own exhibits contradict her characterization of Coggins' and Wayne County Memorial's work restrictions. Coggins' report states that plaintiff could return to work on October 29, 2007, albeit light duty work. (Reid Dep. Def.'s Ex. 4, 5.) The emergency room records only note that plaintiff should rest and avoid painful movements for a week, her arm was to be placed in a sling, and that she should be prescribed Lortab. (Ex. Decl. Wayne County Memorial Hospital, p. 4.)

Absent from the records is any affirmative statement that plaintiff could not or should not work. The absence of a medical report recommending leave, combined with plaintiff's own failure to ask for leave, illustrates that defendant did not have notice that plaintiff needed FMLA leave.

Additionally, defendant provided the declaration of Paula Whitaker who affirms that on October 30, 2007, Whitaker received a message from plaintiff stating that she would be out of work on Monday and Tuesday, but would return Wednesday "expecting to be able to work regular duty." (Whitaker Dec. ¶ 5.) Plaintiff did not address Whitaker's testimony in her opposition to summary judgment. Taking the facts in the light most favorable to plaintiff, the record reflects that plaintiff made no statement she needed medical leave. On the contrary, as late as October 30, 2007, there is evidence that suggests plaintiff told defendant that she planned to return to work.

Plaintiff argues that defendant did not provide her with adequate notice under the FMLA. When a plaintiff has an unforseen need for leave, and the employer makes a request for medical certification, the FMLA states that the employee has fifteen (15) days to provide the certification to the employer. Additionally, defendant's own human resources policy allows for fifteen (15) days for an employee to provide medical documentation after "receipt of written request [the employee]

12

do so." (Reid Dep. Def.'s Ex. 2, at 2.)[5] However, defendant is only required to provide the fifteen-day allowance when the employee provides notice of his/her need for leave under the FMLA. As previously discussed, plaintiff did not request FMLA leave or put defendant on notice that such leave was needed.

The court turns its attention now to what is a "serious health condition" even where plaintiff's termination, as discussed above, did not violate the FMLA because of a failure to give proper notice. The factual record on which plaintiff seeks benefits under the FMLA is also insufficient due to timing of the showing, where plaintiff argues that she had a "serious health condition" under the FMLA based on her course of treatment beginning with Dr. Rockwell in December 2007.

The FMLA entitles an eligible employee to as many as twelve (12) weeks of unpaid leave per year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Miller v. AT & T Corp., 250 F.3d 820, 825 (4th Cir. 2001); 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves "(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id.; 29 U.S.C. § 2611(11). Thus, an eligible employee is entitled to FMLA leave for an illness that incapacitates the employee from working and for which the employee receives "continuing treatment," a term not defined by the FMLA.

The regulations provide guidance as to what constitutes "continuing treatment." See 29

---

[5]The FMLA does not require that the employer give written notice of its need for medical certification before the fifteen day allowance. Defendant's policy is arguably stricter than the FMLA, but as discussed above, the fifteen-day allowance was not triggered because plaintiff did not provide notice of her need for FMLA leave.

13

C.F.R. § 825.114 (2006). "Continuing treatment" involves a period of more than three days of incapacity as well as treatment "two or more times" by a health care provider like a nurse or physician's assistant under the supervision of a health care provider, or treatment one time by a health care provider that results in a regimen of continuing treatment. Id. The regulations further provide that "treatment" "includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b). The Fourth Circuit has noted that the inquiry of whether an illness or condition qualifies as a "serious health condition" focuses on the "effect of an illness on the employee and the extent of necessary treatment rather than on the particular diagnosis." Id. at 835. Thus, the question of whether plaintiff was incapacitated, or suffered a serious medical condition requires an examination of the effect of the illness on plaintiff and the course of treatment she received.

Defendant correctly points out Coggins was a physician's assistant and plaintiff only saw him once, and a single visit to a physician's assistant is insufficient to satisfy a course of treatment.[6] (Coggins Dep. 6:13-18, 20-25.) In response, plaintiff argues that she had a "serious medical condition" under the FMLA based on her course of treatment beginning with Dr. Rockwell in December 2007. This course of treatment is not relevant, however, because it began after plaintiff's termination, which, as discussed above, did not violate the FMLA because plaintiff did not give adequate notice of her need for leave.

Plaintiff's complaint also alleges violations of 29 U.S.C. § 2615. That provision of the FMLA prohibits various activities such as employer interference with an employee's use of leave

---

[6]Defendant correctly points out that under the 1995 regulations, in effect when plaintiff saw Coggins, a plaintiff must undergo treatment by a physician's assistant under the supervision of a physician at least twice, for the condition to qualify as a serious medical condition. See 29 C.F.R. § 825.114(a)(2)(i)(A). The regulations have since changed regarding the number of times a plaintiff must see a physician's assistant. See 29 C.F.R § 825.115.

under the FMLA or employer retaliation against an employee who asserts his or her rights under the FMLA. Unlawful interference under the FMLA occurs when an employer prevents or impedes an employee from exercising his or her FMLA rights. Such an employer is liable to the employee for, as appropriate, damages and equitable relief. Reed v. Buckeye Fire Equip., 241 Fed.Appx. 917, 924-925, (4th Cir. 2007); 29 U.S.C. §§ 2615(a), 2617(a).

To state such a claim, the employee must prove that the employer: (1) interfered with his or her exercise of FMLA rights; and (2) caused prejudice thereby. Id. (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). Actionable interference occurs where the employer impedes, restrains, or denies the exercise of any rights protected the FMLA. Id.; 29 C.F.R. § 825.220(a). Prejudice exists where an employee loses compensation or benefits "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); sustains other monetary losses "as a direct result of the violation," § 2617(a)(1)(A)(i)(II); or suffers some loss in employment status remediable through "appropriate" equitable relief, § 2617(a)(1)(B).

To establish a *prima facie* case of retaliation, plaintiff must prove three elements: (1) she "engaged in protected activity;" (2) "an adverse employment action was taken against her;" and (3) "there was a causal link between the protected activity and the adverse employment action." Wright v. Southwest Airlines, 319 Fed.Appx. 232, 233 (4th Cir. 2009) (quoting Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)). Once she establishes the elements of a *prima facie* case, the burden shifts to defendant to proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action. Id. (citations omitted). If defendant carries its burden, plaintiff must then have an opportunity to prove by a preponderance of the evidence that the proffered reasons were pretextual. Id. (citations omitted).

Plaintiff did not provide adequate notice of her need for leave under the FMLA. As such, she did not exercise her rights under the FMLA or engage in protected activity such as requesting or taking FMLA leave for reasons discussed. Additionally, plaintiff has not come forward with specific facts to support either an interference or retaliation claim. She has not alleged facts to suggest that defendant impeded, restrained, or denied her FMLA leave, as is required for an interference claim.

In support of the interference claim, plaintiff notes that the 30(b)(6) designee, Lisa Boykin, did not know of any individual notices of FMLA rights given to plaintiff. Boykin's testimony does not support either an interference or retaliation claim. Her testimony supports the court's earlier determination that there is no genuine issue of fact that plaintiff failed to give defendant sufficient notice that she needed medical leave, and as a result, defendant did not provide plaintiff with the employer notice required under the FMLA because it was not aware the FMLA was implicated.[7] Plaintiff cannot establish a prima facie case for either the interference or retaliation claims.

## CONCLUSION

For all of these reasons, the court GRANTS defendant's motion for summary judgment. Plaintiff shall have and recover nothing from defendant. The clerk is DIRECTED to close the case.

SO ORDERED, this the 13th day of December, 2010.

_____
LOUISE W. FLANAGAN
Chief United States District Judge

---

[7]Boykin notes in her deposition that the typical situation in which defendant would notify an employee of FMLA leave policies is when "an employee has requested some type of leave." (Boykin Dep. 16:12-13.) As previously discussed, the record does not show that plaintiff requested medical leave, and did not implicate the FMLA.